## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**DANIEL LEE BEDFORD,**

        **Plaintiff,**

                                     **Case No.: 2:11-cv-351**

**-v-**                                  **JUDGE SMITH**

                                     **Magistrate Judge King**

**JOHN R. KASICH, GOVERNOR, *et al.*,**

        **Defendants.**

### OPINION AND ORDER

Plaintiff Daniel Lee Bedford, a state prisoner sentenced to death by the State of Ohio, has filed a civil rights action under 42 U.S.C. § 1983 asserting a single claim for relief for violation of his Procedural Due Process rights as guaranteed by the Fourteenth Amendment to the United States Constitution (Doc. 11). Plaintiff Bedford brings this action against Defendants John R. Kasich, Governor of the State of Ohio, Gary C. Mohr, Director of the Ohio Department of Rehabilitation and Correction ("ODRC"), Donald Morgan, Warden of the Southern Ohio Correctional Facility, David Bobby, Warden of the Ohio State Penitentiary, Mike Dewine, Attorney General of the State of Ohio, Joseph T. Deters, Hamilton County Prosecuting Attorney, and Ronald Springman, Assistant Hamilton County Prosecuting Attorney/Chief of the Appellate Division.

This matter is before the Court on Plaintiff Bedford's Motion for Temporary Restraining Order and Preliminary Injunction seeking a stay of his execution currently scheduled for May 17, 2011 (Doc. 2). Defendants have filed a Response in Opposition to Plaintiff's Motion (Doc. 8) and

have also filed a Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim (Doc. 7). Responses and replies have been filed to the respective motions. (Docs. 16, 17 and 20). The Court held a hearing on the Motions on May 2, 2011. Both sides were given the opportunity to present their arguments and rebuttals. For the reasons that follow, the Court **DENIES** Defendants' Motion to Dismiss and **DENIES** Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction.

## I.    BACKGROUND

Plaintiff Daniel Lee Bedford is currently scheduled to be executed by the State of Ohio on May 17, 2011. Plaintiff Bedford was sentenced to death on November 6, 1984, for the aggravated murder of Gwen Toepfert.

The facts presented at trial indicate that in 1978, Bedford met Gwen Toepfert, whose father owned the bar where Bedford worked. For the next several years, the two were involved in an "on-again, off-again" relationship. By 1984, they were estranged. On April 21, 1984, Bedford visited Toepfert's apartment bearing a gift and hoping to make amends, but instead learned that her new boyfriend John Smith was there. In the early morning hours of April 24, 1984, Bedford gained entry into Toepfert's apartment, and shot and killed both her and her new boyfriend, John Smith. At the time of the murders, Ms. Toepfert's roommate, JoAnn Funk was present in the apartment and observed most of what transpired in the apartment. Bedford then fled to Tennessee and visited a former acquaintance, to whom Bedford eventually confessed that he had killed two people. Bedford's acquaintance turned him in and he was arrested by the Tennessee police. Bedford gave

a statement admitting to the crimes and later gave a similar statement to the Cincinnati authorities.[1]

## II.   PROCEDURAL HISTORY

Following a jury trial, Bedford was convicted of the aggravated murder of Toepfert and the murder of Smith. After a mitigation hearing, the jury recommended the death penalty, and the trial court agreed. Bedford's conviction and death sentence were upheld by the state court of appeals and the Ohio Supreme Court. *See State v. Bedford*, No. C-840850, 1986 Ohio App. LEXIS 8608 (Ohio Ct. App. Oct. 8, 1986); *State v. Bedford*, 39 Ohio St.3d 122 (1988). Bedford sought state post-conviction relief, which the Ohio courts denied. *See State v. Bedford*, 1991 Ohio App. LEXIS 4252 (1st Dist. Ct. App. 1991) (per curiam), appeal denied, *State v. Bedford*, 583 N.E.2d 1320 (Ohio 1992). Bedford then filed a motion for reconsideration and another seeking reinstatement of his direct appeal, both to no avail. *See State v. Bedford*, 626 N.E.2d 957 (Ohio 1994); *State v. Bedford*, 622 N.E.2d 656 (Ohio 1993).

In 1992, Bedford filed a petition for habeas corpus relief. (Case No.: 1:92-cv-00547). This Court denied his habeas petition. *Bedford v. Collins*, 2007 U.S. Dist. LEXIS 33875 (S.D. Ohio 2007) (Smith, J.). The judgment was affirmed by the Sixth Circuit Court of Appeals. *Bedford v. Collins*, 567 F.3d 225 (6th Cir. 2009). Thereafter, Bedford was denied a writ of certiorari by the United States Supreme Court. *Bedford v. Collins*, 130 S. Ct. 2344 (2010).

On August 11, 2010, Bedford filed a petition in the Hamilton County Court of Common Pleas asserting that pursuant to *Atkins v. Virginia*, 536 U.S. 304 (2002), he was mentally retarded and therefore ineligible for the death penalty. On August 17, 2010, the State filed a motion to dismiss the

---

[1]  The full details of the underlying case are not included as they have been fully set forth in the state courts decisions and this Court and the Sixth Circuit's orders on Bedford's habeas corpus petition and as they are not relevant to the instant proceedings.

petition, arguing that it was untimely. On October 18, 2010, the trial court issued a final order summarily dismissing the petition. Bedford thereafter filed a timely appeal to the Ohio Court of Appeals, which remained pending at the time Bedford filed his complaint.

On April 29, 2011, however, the state appellate court issued a decision affirming the trial court's judgment "as modified." (Doc. 14-1, at 2). Specifically, the state appellate court held that the state trial court was without jurisdiction to entertain Bedford's petition under Ohio Rev. Code § 2953.21 because Bedford had filed his petition "well after the 180 days prescribed by R.C. 2953.21(A)(2)...[.]" (Doc. 14-1, at 6). As for the jurisdictional requirements for filing a successive and/or untimely petition, set forth in Ohio Rev. Code § 2953.23, the state appellate court held that Bedford plainly satisfied the §2953.23(A)(1)(a) requirement of demonstrating the existence of a new, retrospectively applicable constitutional right–*Atkins*–but that Bedford could not satisfy the §2953.23(A)(1)(b) requirement of demonstrating by clear and convincing evidence that but for constitutional error at the sentencing, no reasonable factfinder would have found Bedford eligible for the death penalty. (Doc. 14-1, at 7). In so holding, the state appellate court examined the mental health evidence that Bedford had submitted in support of his petition–albeit, evidence adduced in connection with Bedford's 1984 trial and sentencing and prior to the *Atkins* and *Lott* decisions–and concluded that the evidence was insufficient to establish "by clear and convincing evidence the claimed Eighth Amendment violation." (*Id*. at 14). Bedford's counsel indicated at the May 2, 2011 hearing that Bedford is represented by different counsel in his state-court *Atkins* litigation and that those attorneys are preparing to initiate an appeal of the court of appeals' decision to the Ohio Supreme Court.

On February 8, 2011, while Bedford's appeal was pending before the intermediate appellate court, the Supreme Court of Ohio issued an order setting Bedford's execution for May 17, 2011. On February 15, 2011, Bedford moved the Supreme Court of Ohio to stay his execution, citing in part his pending post conviction litigation.  On April 6, 2011, the Supreme Court of Ohio denied Bedford's motion.  On April 25, 2011, Bedford initiated this case by filing his Complaint under 42 U.S.C. §1983 and a Motion for a Temporary Restraining Order and Preliminary Injunction.

## III.    STANDARD OF REVIEW

Rule 65(b) of the Federal Rules of Civil Procedure permits a party to seek injunctive relief to prevent immediate and irreparable injury.  A temporary restraining order is an extraordinary remedy whose purpose is to preserve the status quo.  The factors considered in granting a temporary restraining order or a preliminary injunction are similar in nature.  In the Sixth Circuit, it is well-settled that the following factors are to be considered in determining whether a temporary restraining order is necessary:

> (1) whether the movant has a strong or substantial likelihood of success on the merits;
> (2) whether the movant would suffer irreparable injury without the relief requested;
> (3) whether issuance of the injunction will cause substantial harm to others; and (4) whether the public interest will be served by issuance of the injunction.

*Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 432 (6th Cir. 2004).  The factors are not prerequisites; rather, they must be balanced.  *Capobianco, D.C. v. Summers*, 377 F.3d 559, 561 (6th Cir. 2004); *see also Michigan Bell Tel. Co. v. Engler*, 257 F.3d 587, 592 (6th Cir. 2001) (no single factor is determinative.); *Monongahela Power Co. v. Schriber*, 322 F. Supp. 2d 902, 918 (S.D. Ohio 2004).

The decision whether or not to issue a preliminary injunction falls within the sound discretion

of the district court. *See Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 102 (6th Cir. 1982). "The purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits." *United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.*, 163 F.3d 341, 348 (6th Cir. 1998) (*citing Stenberg v. Checker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978)).

## IV.    DISCUSSION

As a threshold matter, the Court must address whether it has jurisdiction. This requires the Court to determine whether Plaintiff Bedford alleges an actionable ground for relief under 42 U.S.C. § 1983 and a violation of due process. The Court must also determine whether Bedford's Complaint alleges facts sufficient to overcome the bar of Eleventh Amendment Immunity. Assuming that Bedford has adequately pled a §1983 action, the Court will address the merits of Bedford's Motion for a Temporary Restraining Order and Preliminary Injunction.

### A.    Motion to Dismiss

#### 1.    Jurisdiction

Before entertaining the merits of Plaintiff Bedford's request for a temporary restraining order and preliminary injunction staying his execution, the Court must determine whether or to what extent it has jurisdiction. *See, e.g., American Telecom Co., L.L.C. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007) ("Subject matter jurisdiction is always a threshold determination.") (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 1010 (1998)). This determination favors Bedford and compels the Court to find that his claims are properly asserted under 42 U.S.C. § 1983.

In *Skinner v. Switzer*, 562 U.S. __, 131 S.Ct. 1289 (2011), the United States Supreme Court considered the following question: "May a convicted state prisoner seeking DNA testing of crime-

scene evidence assert that claim in a civil rights action under 42 U.S.C. § 1983, or is such a claim cognizable in federal court only when asserted in a petition for a writ of habeas corpus under 28 U.S.C. § 2254?" 131 S.Ct. at 1293. The Supreme Court concluded that "a postconviction claim for DNA testing is properly pursued in a § 1983 action." *Id*. The Supreme Court explained that Skinner's claim sounded under § 1983, rather than in habeas corpus, because "[s]uccess in the suit gains for the prisoner only access to the DNA evidence, which may prove exculpatory, inculpatory, or inconclusive." *Id*. "In no event," the Supreme Court continued, "will a judgment that simply orders DNA tests 'necessarily impl[y] the unlawfulness of the State's custody.' " *Id*. (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005)).

Bedford, like Skinner, alleges that the state courts' interpretation and/or application of a state rule has deprived Bedford of his Fourteenth Amendment right to procedural due process. He seeks the right to develop and present evidence in the state courts to establish that he is mentally retarded and therefore ineligible for the death penalty. As in *Skinner*, success in Bedford's suit would gain for Bedford only an opportunity to develop evidence that may or may not, ultimately, establish that he is mentally retarded and ineligible for execution. Further, as in *Skinner*, success in Bedford's suit will not necessarily imply the unlawfulness of the state's death sentence against him.

In *Atkins v. Virginia*, 536 U.S. 304 (2002), the United States Supreme Court held that the Eighth Amendment prohibits states from executing mentally retarded individuals. In so holding, however, the Supreme Court left to the states the tasks of not only establishing the standard for finding that a person is mentally retarded, but also fashioning procedures for pursuing an "*Atkins*" claim.

The Ohio Supreme Court in *State v. Lott*, 97 Ohio St. 3d 303 (2002), set forth the substantive standards and procedural guidelines for pursuing an *Atkins* claim in Ohio.  According to *Lott*, an individual is mentally retarded for *Atkins*' purposes if he or she demonstrates all three of the following: (1) significantly subaverage intellectual functioning; (2) significant limitations in two or more adaptive skills, such as communication, self-care, and self-direction; and (3) onset before the age of 18.  *Id.* at 305.  The Ohio Supreme Court relied on the fact that the United States Supreme Court in *Atkins* cited the same standard with approval and that both the American Association of Mental Retardation and the American Psychiatric Association define the standard as such.  The Ohio Supreme Court also held "that there is a rebuttable presumption that a defendant is not mentally retarded if his or her IQ is above 70."  *Id*. With respect to procedural guidelines, the Ohio Supreme Court held that the procedures set forth in Ohio Rev. Code § 2953.21 *et seq*. were suitable for pursuing at *Atkins* claim and that such claims are to be adjudicated through a bench trial, not a jury trial.  *Id*. at 305-06.  The Ohio Supreme Court also held that the accused bears the burden of proving an *Atkins* claim by a preponderance of the evidence, that the trial court shall conduct a *de novo* review of the evidence presented, and that the trial court must issue written findings setting forth the rationale for its decision.  *Id*. at 306-07.  At the conclusion, the Ohio Supreme Court clarified that defendants who already had been sentenced to death had 180 days from the date of the *Lott* decision to file their postconviction petitions alleging at *Atkins* claim, but that "[p]etitions filed more than 180 days after this decision must meet the statutory standards for untimely and successive petitions for postconviction relief."  *Id*. at 307.

In the instant case, as noted in the procedural history above,  Bedford filed a petition in the Hamilton County Court of Common Pleas on August 11, 2010 asserting he was ineligible for

execution under *Atkins v. Virginia*, 536 U.S. 304 (2002). On August 17, 2010, the State filed a motion to dismiss, arguing that the petition was untimely. On October 18, 2010, the trial court issued a final order summarily dismissing the petition without findings of fact, conclusions of law, or any reasoning at all. Bedford thereafter filed a timely appeal to the Ohio Court of Appeals, which remained pending at the time that Bedford filed his complaint. On April 29, 2011, however, the state appellate court issued a decision affirming the trial court's judgment "as modified." (Doc. 14-1, at 2).

Specifically, the state appellate court held that the state trial court was without jurisdiction to entertain Bedford's petition under Ohio Rev. Code § 2953.21 because Bedford had filed his petition "well after the 180 days prescribed by R.C. 2943.21(A)(2)...[.]" (Doc. 14-1, at 6). As for the jurisdictional requirements for filing a successive and/or untimely petition, set forth in Ohio Rev. Code § 2953.23, the state appellate court held that Bedford plainly satisfied the (A)(1)(a) requirement of demonstrating the existence of a new, retrospectively applicable constitutional right–*Atkins*–but that Bedford could not satisfy the (A)(2) requirement of demonstrating by clear and convincing evidence that but for constitutional error at the sentencing, no reasonable factfinder would have found Bedford eligible for the death penalty. (Doc. 14-1, at 7). In so holding, the state appellate court examined the mental health evidence that Bedford had submitted in support of his petition–albeit, evidence adduced in connection with Bedford's 1984 trial and sentencing and prior to the *Atkins* and *Lott* decisions–and concluded that the evidence was insufficient to establish "by clear and convincing evidence the claimed Eighth Amendment violation." (*Id.* at 14).

Bedford argues herein that "[t]he State of Ohio has denied Mr. Bedford access to the state processes by which it is determined whether he is mentally retarded and therefore ineligible for capital

punishment." (Doc. 11, at 2, ¶ 3). Bedford reasons that he "is scheduled to be executed without any determination made as [to] whether or not he is mentally retarded" and that "[t]his deprivation of Mr. Bedford's liberty interest in receiving a determination regarding mental retardation is in violation of his procedural-due-process right." (*Id.*). In so asserting, Bedford emphasizes that he is not seeking to challenge the merits of the trial court's or appellate court's disposition. "Instead," Bedford explains, "this is an independent federal claim, challenging the constitutionality of the state rule (the exclusive procedure for pursuing *Atkins* claims set out in *Lott*) as construed by the state court." (*Id.* at 10, ¶ 39).

In his response to Defendants' motion to dismiss, Bedford expands upon his arguments. Specifically, Bedford takes aim at various aspects of the state appellate court's decision, which the state appellate court had not issued at the time that Bedford filed his complaint. Bedford complains that the state appellate court "purported to evaluate the merits of Mr. Bedford's mental-retardation claim, but did so only on the basis of the statement of his claim in his *Atkins* petition and material from his trial generated under a pre-*Atkins* standard, still without permitting Mr. Bedford to develop and present evidence of his claim, as he had requested." (Doc. 16, at 4). "Thus," Bedford reiterates, he "continues to be denied his liberty interest 'in receiving a full and adequate determination as to mental retardation before he is executed.' " (*Id.* (quoting Complaint, Doc. 11, at ¶ 31)).

The Court is satisfied that under *Skinner v. Swtizer*, Bedford's complaint alleges a cause of action under 42 U.S.C. § 1983. To reiterate: Bedford, like Skinner, alleges that the state courts' interpretation and/or application of a state rule–*State v. Lott* and Ohio Rev. Code § 2953.23–has deprived Bedford of his Fourteenth Amendment right to procedural due process. He seeks the right to develop and present evidence in the state courts establishing that he is mentally retarded and

therefore ineligible for the death penalty.  As in *Skinner*, success in Bedford's suit would gain only an opportunity for Bedford to develop evidence that may or may not establish that he is mentally retarded and ineligible for execution.  As in *Skinner*, success in Bedford's suit will not necessarily imply the unlawfulness of the state's death sentence against him.  Bedford made clear in his pleadings and during oral argument that he is <u>not</u> challenging the merits of the state courts' disposition of his *Atkins* petition and is <u>not</u> asking this Court to address the merits of his claim that he is mentally retarded and ineligible for the death penalty.  The only judgment that Bedford seeks is a judgment finding that the Ohio courts' application of *State v. Lott* violated Bedford's Fourteenth Amendment right to procedural due process.  Such a judgment would entitle Bedford only to a full hearing and process on his *Atkins* petition before he could be executed.  It in no way would speak to the validity of Bedford's conviction or death sentence.

Defendants argued at the hearing that Bedford had failed to state a claim upon which this Court could grant relief because this Court could neither legally or logically command any of the named Defendants not to make certain arguments against Bedford's *Atkins* petition nor legally or logically direct the state courts about the manner in which they are to apply *Lott* to Bedford.  The Court disagrees.  The very essence of a constitutional violation asserted under color of 42 U.S.C. § 1983 authorizes federal courts to issue a variety of reliefs, including a declaratory judgment that particular state rule or execution protocol is constitutionally inadequate.  Such relief does not imply the underlying criminal judgment against the petitioner; in this case, it would simply prohibit the state courts from carrying out the criminal judgment against Bedford until the state corrects the constitutionally inadequate process.

Because the Court concludes that Bedford's claim sounds in 42 U.S.C. § 1983, the Court **DENIES** Defendants' motion to dismiss the complaint for the failure to state a claim upon which relief may be granted.

### 2.    Eleventh Amendment Immunity

Defendants argue that Bedford's § 1983 claim is barred by the Eleventh Amendment to the United States Constitution.  The Eleventh Amendment establishes that:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. Amend. XI.  Under the Eleventh Amendment, federal courts lack jurisdiction to hear suits by private citizens against a State unless the State explicitly consents to the suit or unless Congress, pursuant to a valid exercise of power, indisputably consents its intent to abrogate state immunity.  *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990).  Furthermore, "[s]tates are protected by the Eleventh Amendment from suits brought under section 1983, because the statute only creates a cause of action against a 'person' who causes the deprivation of another's Constitutional rights."  *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, n.8 (6ᵗʰ Cir. 2007) (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989)).

Plaintiff Bedford's claim is against various officials of the State of Ohio and Hamilton County in their individual and official capacities seeking an injunction staying his execution currently scheduled for May 17, 2011.  Bedford argues that *Ex parte Young* permits his claim against the Defendants who are proper parties because they are acting under color of state law in allegedly violating Bedford's procedural due process rights.  209 U.S. 123, 150-157 (1908).  In *Ex parte Young*, the United States Supreme Court established an exception to Eleventh Amendment immunity

-12-

for claims for injunctive relief against individual state officials in their official capacities.  The *Ex parte Young* Court held that a suit challenging the constitutionality of the state official's action in enforcing state law is not considered to be against the State, and therefore Eleventh Amendment immunity does not apply.  *Id.* at 150-156.  The test for determining whether the *Ex parte Young* exception applies is a "straightforward" one.  *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002).  The court considers "whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."  *Id.* (alteration in original) (citation omitted); *Dubuc v. Mich. Bd. of Law Exam'rs*, 342 F.3d 610, 616 (6th Cir. 2003).  The focus of the inquiry remains on the allegations only; it "does not include an analysis of the merits of the claim."  *Verizon*, 535 U.S. at 646; *Dubuc*, 342 F.3d at 616.  Moreover, the *Ex parte Young* fiction does not apply unless the officer sued has "some connection with the enforcement of the act."  *Ex parte Young*, 209 U.S. at 157.

Defendants argue that *Ex parte Young* does not apply because they are enforcing a presumptively valid state court judgment and not an allegedly unconstitutional time limitation for bringing a timely *Atkins* claim.  (Defs.' Reply at 4).  Defendants rely on *Virginia Office for Protection and Advocacy v. Stewart*, 563 U.S. ___, 2011 U.S. LEXIS 3186 (2011), a recent United States Supreme Court case that applied *Ex Parte Young* and provided a close examination of when it applied.  The *Stewart* Court held:

> This doctrine has existed alongside our sovereign-immunity jurisprudence for more than a century, accepted as necessary to "permit the federal courts to vindicate federal rights."  *Pennhurst*, 465 U.S., at 105, 104 S. Ct. 900, 79 L. Ed. 2d 67.  It rests on the premise -- less delicately called a "fiction," id., at 114, n. 25, 104 S. Ct. 900, 79 L. Ed. 2d 67 -- that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes.  The doctrine is limited to that precise situation, and does not apply "when 'the state is the real, substantial party in interest,'" *id.*, at 101, 104 S. Ct. 900, 79 L.

> Ed. 2d 67 (quoting *Ford Motor Co. v. Department of Treasury of Ind.*, 323 U.S. 459, 464, 65 S. Ct. 347, 89 L. Ed. 389 (1945)), as when the "'judgment sought would expend itself on the public treasury or domain, or interfere with public administration,'" 465 U.S., at 101, n. 11, 104 S. Ct. 900, 79 L. Ed. 2d 67 (quoting *Dugan v. Rank*, 372 U.S. 609, 620, 83 S. Ct. 999, 10 L. Ed. 2d 15 (1963)).

*Id.* at *13-14.

Defendants assert that in order to trigger *Ex parte Young*, they must have some connection to enforcement of the allegedly unconstitutional act. Yet, Defendants assert that this is impossible as Bedford's state court judgment is presumptively valid. It has been upheld in the Ohio courts and in federal habeas corpus. While these named Defendants may not have actually done anything preventing Bedford from meeting the requirements set forth in Ohio Rev. Code §§ 2953.21 or 2953.23, to file an *Atkins* claim, at least one named Defendant, the Ohio Attorney General, is charged with the enforcement of Ohio's laws. The Court therefore concludes that the allegations in Bedford's Complaint fall within the *Ex parte Young* exception. Bedford has alleged an ongoing violation of federal law, specifically that Defendants continue to deny him the opportunity to fully and fairly develop and present his *Atkins* claim before executing him, in violation of his procedural due process rights. Further, Bedford is seeking an injunction staying his execution scheduled for May 17, 2011, which constitutes prospective relief. The Court therefore finds that the *Ex parte Young* exception applies to this case as a matter of law and Defendants are not entitled to immunity under the Eleventh Amendment.

Additionally, Defendants argue that "none of the named defendants are actively 'violating federal law.'" (Defs.' Mot. at 6). Defendants assert that the named Defendants are not even capable of depriving Plaintiff of his liberty interest in utilizing the state procedures set out in *State v. Lott*, 97 Ohio St. 3d 303, 779 N.E.2d 1011 (2002). Even assuming everything Bedford alleges is true,

-14-

Defendants argue that it was not "the action or inaction of the named defendants that led to any alleged 'procedural due process' violation." (Defs.' Mot. at 6). Defendants further argue that they are doing nothing more than "attempting to enforce *presumptively valid judgments* of the state courts." (*Id*.). However, as set forth above, in evaluating whether the *Ex parte Young* exception applies, the Court need only look to the allegations in the complaint, not the merits of the claim. *See Verizon*, 535 U.S. at 646; *Dubuc*, 342 F.3d at 616.

Based on the foregoing, Plaintiff Bedford's claim against the Defendants in this case is not barred by Eleventh Amendment immunity as it falls within the exception carved out by *Ex parte Young*.

### 3.    Waiver

Defendants argue that Bedford waived his right to bring an *Atkins* claim and accordingly has no claim here. Defendants assert that "[t]here is nothing unreasonable in placing a reasonable time limitation on asserting claims, and in declining to review a claim that has not been timely presented." (Defs.' Mot. at 9). Defendants rely on a number of state and federal courts that have held that claims under *Atkins* may be waived or defaulted if not properly presented according to state procedures. *State v. Frazier*, 115 Ohio St. 3d 139, 161-162 (2007); *Hedrick v. True*, 443 F.3d 342, 363-366 (4th Cir. 2006); *Bowling v. Commonwealth*, 163 S.W.3d 361, 371 (Ky. 2005); *Winston v. Commonwealth*, 268 Va. 564, 617 (2004); *Head v. Hill*, 277 Ga. 255, 259 (2003).

Plaintiff Bedford argued in his response and at the hearing that the waiver cases are not appropriate in this case because the *Lott* decision provided for an alternative means of bringing an *Atkins* claims, namely by following the requirements set forth in Ohio Rev. Code §2953.23, when the claim in not timely filed in accordance with Ohio Rev. Code §2353.21. The Court agrees, as

discussed in detail above, that Bedford failed to file a timely *Atkins* claim in accordance with Ohio Rev. Code §2953.21, but that does not mean that he has waived his right to bring a claim.  It just means that he now has to meet the requirements set forth in Ohio Rev. Code §2953.23.  Therefore, the Court finds that Defendants' waiver argument is not applicable in this case since Bedford did have an avenue in which to raise his *Atkins* claim.

**B.      Temporary Restraining Order and/or Preliminary Injunction**

As noted above, in the Sixth Circuit, the following factors are to be considered in determining whether a temporary restraining order is necessary:

> (1) whether the movant has a strong or substantial likelihood of success on the merits;
> (2) whether the movant would suffer irreparable injury without the relief requested;
> (3) whether issuance of the injunction will cause substantial harm to others; and (4) whether the public interest will be served by issuance of the injunction.

*Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d at 432.  As the Sixth Circuit has explained, " '[t]hese factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together.' " *Cooey v. Strickland*, 589 F.3d 210, 218 (6th Cir. 2009) (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)).  The Court will assess each of the factors, irrespective of whether or to what extent the parties offer arguments on the factors.

**1.      Likelihood of success on the merits**

This factor does not favor Bedford.  Bedford brings his claims under 42 U.S.C. § 1983, arguing that Defendants have violated his procedural due process rights in refusing to determine, before executing him, whether he is mentally retarded.  In so arguing, Bedford appears to take issue with the constitutional adequacy of the procedures set forth in *State v. Lott* , as construed or applied by the state courts to him.

Section 1983 provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

A § 1983 claim must satisfy two elements: "1) the deprivation of a right secured by the Constitution or laws of the United States, and 2) the deprivation was caused by a person acting under color of state law." *Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir. 1995). Liability under § 1983 requires the defendant's direct involvement in causing the alleged damages. "Because vicarious liability is inapplicable to . . . [section] 1983 suits, a plaintiff must prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009).

Bedford argues under color of § 1983 that he has a "liberty interest in having a determination made as to whether or not he is mentally retarded before he is executed by the State of Ohio." (Plaintiff's Motion, Doc. 2, at 7). He also argues that the state courts have denied him, wrongly, a full and fair opportunity to litigate his *Atkins* claim. For the reasons that follow, the Court finds that Bedford's argument does not have a strong or substantial likelihood of succeeding on the merits. Bedford did not receive a full hearing on his mental retardation claim because under *State v. Lott*, he was not entitled to full hearing and process unless he first satisfied the procedural requirements in Ohio Rev. Code § 2953.23(A) for the filing of an untimely *Atkins* petition.

One of Bedford's arguments is that he was deprived of his procedural due process rights in the Hamilton County Court of Common Pleas because that court failed to issue written findings and set forth its rationale for finding the defendant mentally retarded or not. The Hamilton County Court

of Common Pleas, in dismissing Bedford's *Atkins* petition, stated only that "the petition is not well taken and is overruled." The State had argued in its motion to dismiss that Bedford's petition was not timely. Bedford does not have a strong or substantial likelihood of succeeding on this argument for two reasons. First, the state trial court was not required to issue findings of fact and conclusions of law because Bedford's complaint was before the state trial court pursuant to Ohio Rev. Code § 2953.23, not § 2953.21. Ohio law requires state trial courts to issue findings of fact and conclusions of law on petitions brought under the latter, but not the former. *See, e.g., State ex rel. Kimbrough v. Greene*, 98 Ohio St. 3d 116, 117 (2002) ("a trial court need not issue findings of fact and conclusions of law when it dismisses an untimely petition."); *cf. Easley v. Hurley*, No. 2:03-cv-460, 2005 WL 2250682, at * 12 (S.D. Ohio Sep. 15, 2005) ("A trial court's decision that a motion for post-conviction relief is untimely renders unnecessary any further inquiry into its merits.").

Second, the state appellate court's decision cured any alleged deficiency in the state trial court's decision. In the wake of the state appellate court's decision explaining in detail why the trial court did not have jurisdiction to entertain Bedford's *Atkins*' petition due to his failure to satisfy the "clear and convincing" jurisdictional requirement set forth in Ohio Rev. Code § 2953.23(A)(2), Bedford will not be heard to complain that he has not been provided with the state courts' rationale underlying its conclusion that the trial court did not have jurisdiction to entertain his *Atkins*' petition. Thus, any argument that Bedford was deprived of his procedural due process rights in the Hamilton County Court of Common Pleas because that court failed to issue written findings and set forth its rationale for denying Bedford's *Atkins*' petition does not have a strong or substantial likelihood of succeeding on the merits.

The Court's finding in this regard provides a segue for addressing another argument advanced

by Bedford in his response to the Defendants' motion to dismiss (Doc. 16) and during the May 2, 2011 hearing. Bedford complains that , "[a]lthough the trial court's judgment and both parties' briefs to the appellate court concerned only the procedural issue of timeliness, (*see id.* at PAGEID #: 27-53; 57), the Court of Appeals adjudicated the merits of Mr. Bedford's claim by referencing evidence and testimony presented at Mr. Bedford's 1984 trial (*see* Doc. No. 14-1 at PAGEID #: 219-225). Bedford does not have a strong or substantial likelihood of succeeding on this argument because it is based on a misreading of the state appellate court's decision. The state appellate court did <u>not</u> adjudicate Bedford's mental retardation claim on the merits. Rather, the state appellate court examined at length the mental retardation criteria set forth in *Atkins* and *Lott*, as well as the evidence that Bedford had submitted in support of his *Atkins* petition, and concluded that Bedford failed to satisfy the "clear and convincing" jurisdictional requirement set forth in Ohio Rev. Code § 2953.23(A)(2) for filing an untimely petition. The state appellate court's decision, however detailed, cannot be characterized as an adjudication on the merits of Bedford's mental retardation claim. The only adjudication made by the state appellate court was that the state trial court had no jurisdiction to entertain Bedford's late petition "because Bedford failed to satisfy the R.C. 2953.23 jurisdictional requirement of outcome-determinative constitutional error in the imposition of his death sentence[,]" and that the petition was accordingly subject to dismissal without an evidentiary hearing or findings of fact and conclusions of law. (Doc. 14-1, at 15). Thus, any argument that Bedford was deprived of procedural due process because the state appellate court, improperly, adjudicated his mental retardation claim on the merits, does not have a strong or substantial likelihood of succeeding on the merits.

The essence of Bedford's due process claim, as this Court understands it, is that the state courts violated his procedural due process rights by the manner in which they applied *State v. Lott* to deny him an opportunity to fully and fairly litigate his *Atkins* claim. This argument does not have a strong or substantial likelihood of succeeding on the merits. By way of reminder, in *State v. Lott*, the Ohio Supreme Court set the time limit for death row inmates to bring claims under *Atkins v. Virginia*, based on Ohio's recognition that this new rule of constitutional law should apply retroactively to prisoners whose sentences were imposed before the *Atkins* decision. *Lott* ordered that any petition for postconviction relief specifically raising an Atkins claim "must be filed within 180 days from the date of judgment in this case." *Lott*, 97 Ohio St. 3d at 308. *Lott* further held that "[p]etitions filed more than 180 days after this decision must meet the statutory standards for untimely and successive petitions for postconviction relief." *Id*. at 307. Bedford was sentenced to death in 1984. *Lott* was decided on December 11, 2002. Bedford filed his *Atkins* petition in the state trial court on August 11, 2010. Bedford obviously filed his *Atkins* petition well outside the deadline set by *Lott*. Thus, he was required to satisfy the statutory standards for untimely and successive petitions for postconviction relief in order to litigate his *Atkins* petition.

Those statutory standards are set forth in Ohio Rev. Code § 2953.23(A) and they are jurisdictional in nature. Section 2953.23(A) provides:

(A) Whether a hearing is or is not held on a petition filed pursuant to section 2953.21 of the Revised Code, a court may not entertain a petition filed after the expiration of the period prescribed in division (A) of that section or a second petition or successive petitions for similar relief on behalf of a petitioner unless both of the following apply:

(1) Either of the following applies:

(a) The petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief.

-20-

> (b) Subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retrospectively to persons in the petitioner's situation, and the petition asserts a claim based on that right.

> (2) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence.

Ohio Rev. Code § 2953.23(A). Bedford plainly satisfied the (A)(1)(b) requirement; subsequent to 180 days from the 1984 judgment against him, the United States Supreme Court issued the *Atkins* decision holding that the Eighth Amendment prohibits the execution of individuals who are mentally retarded. The state appellate court concluded that Bedford could not satisfy the (A)(2) component of demonstrating by clear and convincing evidence that but for constitutional error at his sentencing, no reasonable factfinder would have found Bedford eligible for the death sentence. Bedford takes issue with numerous facets of the state appellate court's conclusion, none of which has a strong or substantial likelihood of succeeding on the merits.

A major argument that Bedford advances is that he was entitled to a full hearing and process in order to demonstrate that he can satisfy the "clear and convincing" jurisdictional requirement set forth in Ohio Rev. Code § 2953.23(A)(2). No such provision is contained in or even suggested by the statute. And Bedford offers no other persuasive authority in support of this novel argument. Thus, it does not have a strong or substantial likelihood of succeeding on the merits.

For the same reasons, Bedford's argument that the state appellate court's decision deprived him of due process by treating him differently than other similarly situated death row inmates who have filed *Atkins*' petitions does not have a strong or substantial likelihood of succeeding on the merits. Bedford suggests that the state appellate court's application of § 2953.23(A)(2)'s "clear and

convincing" standard to him was "unprecedented" and "unexpected." Bedford's argument is curious. The state appellate court followed *Lott* to the letter. As noted above, *Lott* stated in clear, unambiguous, and simple language that "[p]etitions filed more than 180 days after this decision must meet the statutory standards for untimely and successive petitions for postconviction relief." *Lott*, 97 Ohio St. 3d at 307. Bedford will not be heard to argue that the state appellate court's application of those statutory standards to his untimely *Atkins* petition was unprecedented, novel, or unwarranted. Bedford's argument characterizing as "unprecedented" the state appellate court's invocation of §2953.23(A)(2)'s "clear and convincing" standard does not have a strong or substantial likelihood of succeeding on the merits.

Similarly, Bedford asserts that the "treatment of other Ohio death-row inmates who have filed *Atkins* petitions since *Lott* differs markedly from the Ohio appellate court's treatment of Mr. Bedford in its April 29, 2011 decision." (Doc. 16, at 9). Bedford's argument pushes the limits of credulity, to say nothing of not possessing a strong or substantial likelihood of succeeding on the merits. The very example provided by Bedford defeats his argument. Bedford points to *State v. Hughbanks*, where the state appellate court held that Hughbanks was entitled to a hearing, discovery, and experts to present his *Atkins* claim, even in the face of a pre-*Atkins* finding by the Ohio Supreme Court that there was no evidence of mental retardation and evidence that Hughbanks registered a full-scale IQ score of 82. Bedford's reliance on *Hughbanks* is entirely misplaced because Bedford is not similarly situated to Hughbanks. Hughbanks filed a timely *Atkins* petition. Bedford did not. That the state appellate court concluded that Hughbanks was entitled to a hearing, discovery, and experts to prove his *Atkins* claim when he, according to Bedford, made far less of a showing of mental retardation than Bedford, is wholly irrelevant to Bedford's arguments here. Hughbanks received different

consideration because he was in a different procedural posture–a timely one.  Thus, Bedford's argument that the state appellate court violated his due process rights by treating him differently than other similarly situated death row inmates pursuing *Atkins* claims does not have a strong or substantial likelihood of succeeding on the merits.

In a related argument, Bedford suggested at the hearing that there is a difference between an *Atkins* postconviction petition and a "regular" postconviction petition for purposes of the manner in which the petitions are to be adjudicated.  Neither *Atkins*, nor *Lott*, nor any authority of which this Court is aware supports that contention.  To this point, Bedford's reliance on *Panetti v. Quarterman*, 551 U.S. 930, 948, 950 (2007), and *Rivera v. Quarterman*, 505 F.3d 349 (5th Cir. 2007), is misplaced.  Those cases were in too different a procedural and legal posture–namely, habeas corpus–to support Bedford's argument that *Atkins* or *Lott* conferred a substantial procedural due process right to death row inmates claiming mental retardation from which it would follow that an *Atkins* postconviction petition is entitled to different treatment under state rules than a "regular" postconviction petition.  That being so, Bedford's argument does not have a strong or substantial likelihood of succeeding on the merits.

To the extent that Bedford is challenging the constitutional adequacy of *Lott*, his argument does not have a strong or substantial likelihood of succeeding on the merits because *Lott* has been discussed with apparent approval by the United States Supreme Court and the Sixth Circuit.  *Cf. Bobby v. Bies*, 129 S.Ct. 2145, 2150 (2009) (characterizing *Lott* as heeding *Atkins*' call to establish procedural and substantive guidelines for filing mental retardation claims); *Murphy v. Ohio*, 551 F.3d 485, 505-10 (6th Cir. 2009) (discussing and applying *Lott*).  To the extent that Bedford is challenging the constitutional adequacy of Ohio Rev. Code § 2953.23(A), either on its face or as the state courts

applied it to him (or any death row inmate seeking to file an untimely *Atkins* petition), his argument does not have a strong or substantial likelihood of succeeding on the merits. The Sixth Circuit has discussed that statutory provision with apparent approval. *See Landrum v. Mitchell*, 625 F.3d 905, 919 (6th Cir. 2010) (recognizing that "Ohio law permits second, successive, or untimely petitions only under limited circumstances.") (citing Ohio Rev. Code § 2953.23); *see also Davie v. Mitchell*, 547 F.3d 297, 311 (6th Cir. 2008); *Broom v. Mitchell*, 441 F.3d 392, 399-401 (6th Cir. 2006).

For the foregoing reasons, and even indulging Bedford every benefit of the doubt, the Court cannot find that Bedford's arguments have a strong or substantial likelihood of succeeding on the merits. This factor militates against granting Bedford a temporary restraining order or preliminary injunction to stay his May 17, 2011 execution.

### 2. Irreparable harm

Bedford argues and the Court cannot disagree that the failure to grant a temporary restraining order and preliminary injunction before he has a chance to attempt to litigate his *Atkins*-based mental retardation claim would cause him irreparable harm. Bedford is scheduled to be executed on May 17, 2011.

### 3. Harm to others

Bedford argues that allowing him the opportunity to exercise his substantive right not to be executed if mentally retarded will not result in harm to others. The State has an interest in finality by enforcing its sentences and is harmed when execution of valid criminal judgments is delayed without just cause. For that reason, the Supreme Court has consistently upheld the denial of stays of execution sought in connection with otherwise valid § 1983 actions where there is evidence of undue delay on the part of the death row inmate. *See, e.g., Hill v. McDonough*, 547 U.S. 573, 584

-24-

(2006); *Nelson v. Campbell*, 541 U.S. 637, 649-50 (2004); *Gomez v. U.S. Dist. Court for Northern Dist. of California*, 503 U.S. 653, 653-54 (1992) (*per curiam*).

### 4. Public interest

Bedford argues that "[t]here is no downside to the public in allowing Mr. Bedford to avail himself of the procedural safeguards guaranteed to him by the United States and Ohio constitutions and supreme courts and in fact the public interest is served by upholding these rights." (Doc. 2, at 6). Although the protection of constitutional rights is always in the best interests of the public, this Court has not found a violation of constitutional rights here. By his own assertion, Bedford is not litigating here the substance of his claim that he is mentally retarded and therefore ineligible for the death penalty. He is asserting only a procedural due process violation for the manner in which the state courts addressed his petition for postconviction relief, arguments in support of which this Court has found have no strong or substantial likelihood of succeeding on the merits. Against that backdrop, the Court likewise finds that the public interest is not served by ordering a stay of execution for claims that are unlikely to prevail.

Examining and balancing the four preliminary and permanent injunction factors together, the Court concludes that the issuance of a temporary restraining order and preliminary injunction is not warranted in this instance. For the foregoing reasons, the Court **DENIES** Bedford's request for a temporary restraining order and preliminary injunction to stay his May 17, 2011 execution.

-25-

## V.    CONCLUSION

Based on the foregoing reasons, the Court **DENIES** the Defendants' Motion to Dismiss (Doc.

7) and **DENIES** Bedford's Motion for Temporary Restraining Order and Preliminary Injunction

(Doc. 2).

The Clerk shall remove Documents 2 and 7 from the Court's pending motions list.


**IT IS SO ORDERED.**


                                                    */s/ George C. Smith*
                                                    **GEORGE C. SMITH, JUDGE**
                                                    **UNITED STATES DISTRICT COURT**